THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SUMIT GARG,<br><br>Defendant. | CASE NO. CR21-0045-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Sumit Garg's motion to revoke United States Magistrate Judge Mary Theiler's order detaining him before trial (Dkt. No. 36) and the parties' motions to seal (Dkt Nos. 34, 42). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion to revoke the detention order and GRANTS the parties' motions to seal for the reasons explained herein.

I.  **BACKGROUND**

In July 2019, Victim-1 filed for a Temporary Domestic Violence Protection Order against Mr. Garg, who was her roommate at the time. (Dkt. No. 1 at 9.) Mr. Garg settled the action and agreed not to have direct or indirect contact with Victim-1. (*Id*. at 10.) In November 2019, Victim-1 became aware that an anonymous individual had sent e-mails attacking her character to a charity she was publicly involved with. (*Id*. at 11.) In the following months, Victim-1 began to

receive anonymous e-mails harassing her and referencing private information from her diary. (*Id*.) Upon examining the diary, she discovered that entire pages had been ripped out. (*Id*.) Additionally, Victim-1 learned that the harasser had set up social media accounts impersonating Victim-1 and her current and former boyfriends. (*Id*. at 11–12.)

Then in July 2020, Mr. Garg's wife filed a civil action seeking a protection order against Victim-1, claiming that, in fact, she had received harassing e-mails *from* Victim-1. (*Id*. at 13.) Eight days later, Victim-1 refiled her civil action seeking a protection order against Mr. Garg and King County Superior Court issued a temporary protection order. (*Id*.) During the course of that litigation, the harasser sent Victim-1, her current and former boyfriends, and members of her legal team hundreds of messages which included threats to rape, kill, embarrass, or otherwise harm them. (*Id*. at 12.) Additionally, the harasser created fake social media profiles of the victims, created e-mail addresses mimicking their legitimate personal e-mail addresses, and threatened their family members. (*Id*.) Additionally, in October 2020, Victim-1 received an email in which the harasser threatened to rape her. (*Id*. at 15–17.) A few minutes later, she received an email containing photographs from inside the lobby of her apartment building. (*Id*.) When law enforcement examined the apartment building's surveillance tape a few weeks later they saw a man who strongly resembles Mr. Garg entering the lobby a few minutes before Victim-1 received the message. (*Id*.)

In November 2020, Mr. Garg was arrested and charged in King County Superior Court with one felony count of Cyberstalking, one misdemeanor count of Cyberstalking, and one count of Felony Stalking. (*Id*. at 18.) The Court released Mr. Garg on bond but issued no-contact orders prohibiting Mr. Garg from contacting the victims. (*Id*.) After Mr. Garg was released, the victims received more vulgar messages and threats. (*Id.* at 18, 33–40.) In addition, the Seattle Police Department detective who was investigating Mr. Garg, the King County prosecutor prosecuting his case, and multiple King County judges began to receive threatening and harassing e-mails. (*Id*. at 13.) On February 26, 2021, Mr. Garg was arrested again for violating the no contact

orders. (Dkt. No. 35 at 2.)

In March 2021, Mr. Garg was charged with three counts of Cyberstalking in this Court. (Dkt. No. 1.) Magistrate Judge Theiler ordered Mr. Garg detained based on her conclusion that he is a flight risk and a danger to the community. (Dkt. No. 20 at 2.) Mr. Garg now moves for this Court to revoke Judge Theiler's detention order and release Mr. Garg subject to special conditions, including GPS monitoring and restrictions on his access to the internet. (Dkt. No. 36 at 2.)

## II. DISCUSSION

### A. Standard of Review

The Court reviews a magistrate judge's order detaining a defendant before trial *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). Thus, the Court makes its own factual findings and reaches an independent conclusion about whether the defendant should be detained, without deference to the magistrate judge's decision. *Id.*

### B. Legal Standard for Detention

A defendant may be detained before trial only if "no condition or combination of conditions will reasonably assure the [defendant's] appearance . . . and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Government bears the burden of proving by a preponderance of the evidence that no conditions will reasonably assure the defendant's appearance and by clear and convincing evidence that no conditions will reasonably assure the safety of the community. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). When analyzing whether conditions can reasonably assure the defendant's appearance and the safety of the community, the Court must consider (1) the nature and circumstances of the offense charged, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) the danger to the community the defendant would pose if released. 18 U.S.C. § 3142(g).

### C. Flight Risk

The Court agrees with the Government that there is a significant risk that Mr. Garg will flee. First, Mr. Garg is charged with offenses that are subject to a mandatory-minimum sentence, which could result in several years of incarceration if he is convicted. (Dkt. No. 39 at 11.) Moreover, the evidence against Mr. Garg is strong enough for him to believe that there is a reasonable chance he will be convicted. The Government has provided physical and electronic evidence allegedly linking Mr. Garg to the victims and to the harassment. (*See generally* Dkt. No. 1.)

Second, Mr. Garg has extensive ties to India and very few ties to the United States. Mr. was born in New Delhi, lived there for over twenty years, and has frequently returned since moving to the United States in 2015. (Dkt. No. 16 at 2.) Additionally, Mr. Garg's parents and brother, with whom he is very close, live in India. (*Id*.) Mr. Garg argues that he has shown he is committed to staying in the United States by becoming a permanent resident, purchasing a home in West Seattle, attending graduate school, and marrying his wife in the United States. (Dkt. No. 36 at 6.) However, this argument is not particularly persuasive since Mr. Garg's wife relocated to Texas, he lost his job at Deloitte, and his wife was suspended from her job at Amazon. (Dkt. Nos. 39 at 11; 16 at 2–3.)

In light of the evidence against Mr. Garg, the serious charges he faces if convicted, and his extensive ties to India and minimal ties to the United States, the Court agrees with Judge Theiler and concludes that the Government has proved by a preponderance of the evidence that there is a significant risk Mr. Garg may flee.

The Court also agrees with the Government that no conditions can reasonably assure Mr. Garg's appearance. Mr. Garg argues that the conditions recommended by Pretrial Services, including GPS monitoring and the surrender of his travel documents, can reasonably assure his appearance. (Dkt. No. 36 at 8.) He claims that the surrender of his passport was effective in preventing him from fleeing when he was released after facing similar charges in state court.

(*Id.*) Accordingly, he argues that these measures should be similarly effective in this case. (*Id.*) The Court disagrees. When Mr. Garg was released in 2020, the circumstances were very different since Mr. Garg was still employed, living with his wife, and was facing lesser charges. (Dkt. No. 16 at 2–3.) Now, Mr. Garg has a much more compelling motive to flee since he is unemployed, his wife has relocated, he is facing more serious charges, and there is stronger evidence against him. (Dkt. No. 39 at 11.) As a result, the Court does not find Mr. Garg's prior performance on location monitoring to be persuasive evidence he will abide by the conditions recommended by Pretrial Services.

Since Mr. Garg is an Indian national, if he is successful in leaving the United States, it would be extremely difficult and time consuming to extradite him. (*Id.*) For all of these reasons, the Court agrees with the Government and Judge Theiler that no conditions of release would reasonably assure Mr. Garg's appearance. (*See id*.)

### D. Danger to the Community

The Government argues that Mr. Garg is a danger to the community because he has threatened to sexually assault, injure, and kill numerous victims and has continued to engage in this behavior regardless of arrest, civil protective orders, release on bail, and a criminal protective order. (Dkt. No. 39 at 11.) Given the allegations against him and his past behavior, the Court agrees that no conditions of release would reasonably assure the safety of the victims, their family members, or the community.

The nature and circumstances of the offenses demonstrate that Mr. Garg would pose a danger to the community on release. Mr. Garg's alleged offenses are very serious, particularly because of the volume of messages, the number of victims, and the severity of the threats. Mr. Garg has harassed nearly every individual associated with Victim-1 and nearly everyone involved in the civil litigation against him. (Dkt. No. 1 at 4–6.) Moreover, Mr. Garg's alleged harassment has escalated to include his wife's attorney, numerous King County Judges, the prosecutor in his King County case, the SPD detective who investigated him, and even his own

attorney. (*Id*. at 13.)

The threats allegedly made by Mr. Garg are serious, as he has threatened to kill, rape, or harm the victims. Additionally, the tactics Mr. Garg allegedly employed are extreme and have included (1) impersonating people close to the victims; (2) creating fake social media profiles of the victims; (3) threatening to post photographs of the victims and their family members on pornographic websites; (4) contacting the employers, co-workers, and professional contacts of victims and attacking their character; and (5) threatening to expose sensitive information about the victims. (*Id*. at 11–12.) Particularly troubling to the Court is the alleged incident where Mr. Garg snuck into Victim-1's apartment building after threatening to rape her. (*Id*. at 15–16.) It suggests that Mr. Garg may be willing to go beyond cyberstalking and resort to physical intimidation. Notably, despite facing criminal charges and being subject to criminal and civil protective orders, the cyberstalking campaign has continued. (Dkt. No. 35 at 3.) This escalating and severe pattern of behavior poses a serious threat to the victims and to the community.

Additionally, there is considerable evidence indicating that Mr. Garg is behind this harassment campaign. First, Mr. Garg's fingerprints were found on Victim-1's diary, which contained personal information that the perpetrator used to harass and threaten her. (Dkt. No. 1 at 9.) Second, a man strongly resembling Mr. Garg was captured on video surveillance in Victim-1's lobby only a few minutes before the perpetrator sent the threatening e-mail containing photographs of her apartment building. (*Id*. at 16.) Third, when SPD officers searched Mr. Garg's home, they located a handwritten note listing four of the Gmail accounts used to harass the victims. (Dkt. No. 39 at 9.) Fourth, the computer that was used to access one of the e-mail accounts used by the perpetrator was also used to log into Mr. Garg's personal e-mail account. (Dkt. No. 1 at 23.) Mr. Garg disputes this evidence by claiming that his wife has been committing the cyberstalking offenses. (Dkt. No. 41 at 2.) However, this explanation does not account for Mr. Garg's fingerprints on the diary or the person resembling him appearing in Victim-1's lobby. At trial, Mr. Garg may be able to show that his wife is the real perpetrator (or

otherwise raise reasonable doubt about whether he was behind the messages) but for now at least, the physical and electronic evidence presented by the Government is strong enough to suggest that Mr. Garg would pose a danger to the community if he were to be released.

Mr. Garg's prior conduct shows that no conditions will prevent him from continuing his harassment and escalation. Mr. Garg has violated criminal and civil protective orders by continuing to cyberstalk the victims. (Dkt. No. 35 at 3.) For example, when Mr. Garg was released on bond conditions, including home detention and no contact orders, he was arrested only three months later for continuing to harass the victims. (*Id*.) Mr. Garg does not persuasively argue why similar conditions would be effective in preventing harassment when they were ineffective in the past. Equally concerning is that Mr. Garg's alleged harassment escalated to include more victims while he faced serious criminal charges and possible incarceration. Like Judge Theiler, the Court "has little confidence" that he would comply with any conditions of release designed to end the harassment. (Dkt. No. 39-1 at 26.) While it is true that Mr. Garg has no criminal history, other considerations such as the volume and severity of the threats, the number of victims, and Mr. Garg's apparent prior disregard for the civil and criminal no contact orders demonstrate that Mr. Garg's release presents a clear danger to the community.

Therefore, the Government has met its burden by proving by clear and convincing evidence that no set of conditions could reasonably assure the community's safety if Mr. Garg were to be released.

### E.     Motion to Seal

The Government moves to seal an exhibit containing letters from victims of Mr. Garg's alleged harassment. (Dkt. No. 42.) "[T]here is a strong presumption of public access to [the Court's] files." W.D. Wash. Local Civ. R. 5(g)(3). The presumption of public access may be overcome if the Court finds a compelling reason to seal and articulates a factual basis for its decision. *Kamakana v. City & Cnty. Of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006). Having reviewed the exhibit, the Court agrees that it contains highly sensitive personal and

medical information that, if made public in this context, could cause harm to potential witnesses and other persons. Thus, there is a compelling reason that overcomes the presumption of public access to the exhibits. *See id.* The Court therefore GRANTS the Government's motion to seal. (Dkt. No. 42.) Mr. Garg's motion to seal Exhibit 2, which is a copy of the Pretrial Report, is also GRANTED (Dkt. No. 34). *See* W.D. Wash. Local Crim. R. 55(b)(2).

## III. CONCLUSION

For the foregoing reasons, Defendant Sumit Garg's motion to revoke the Court's detention order (Dkt. No. 36) is DENIED, and the parties' motions to seal (Dkt. Nos. 34, 42) are GRANTED. The Clerk is DIRECTED to maintain Docket Numbers 34 and 42 under seal.

DATED this 20th day of May 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
CR21-0045-JCC
PAGE - 8