The Honorable John C. Coughenour

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

               Plaintiff,

      v.

SUMIT GARG,

               Defendant.

NO. CR21-0045 JCC

UNITED STATES' TRIAL BRIEF

## I.  INTRODUCTION

Defendant, Sumit Garg, is charged in an eight-count Superseding Indictment with conspiracy to commit stalking, and with seven counts of stalking.  The charges stem from a scheme by Garg, assisted by Garg's wife, Lindsay Hefton, that began with stalking their former roommate, Melissa Hutchins, and that grew over time to include stalking an ever-growing circle around Hutchins, including Hutchins' friends and family, her lawyers, an investigating police officer, and even State prosecutors.

Garg's trial is scheduled to start on October 18, 2022, at 9:00 a.m.  The United States will be represented by Assistant United States Attorney Andrew C. Friedman, and by Senior Trial Attorney Anthony Teelucksingh, of the Department of Justice, Computer Crime & Intellectual Property Section.  The case agent at trial will be United States Secret Service Special Agent Yoshiko Marinko.  Garg is represented by Peter Camiel.

UNITED STATES' TRIAL BRIEF - 1
*United States v. Sumit Garg,* CR21-045 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Garg has been detained pending trial.  A defense motion to suppress evidence seized from various electronic devices is pending.  *See* Docket No 128.  The parties also anticipate jointly filing a number of motions *in limine* by this week's deadline to file motions *in limine*.

The United States expects to call 15-20 witnesses during its case-in-chief.  The United States anticipates that it will be able to present its case-in-chief in no more than five trial days, assuming reasonable cross-examination by the defense.

## II.   FACTS

### A. Background

In October 2018, Melissa Hutchins (identified as Victim-1 in the Superseding Indictment) moved to Seattle and used an online forum to find a roommate.  Hutchins initially agreed to share an apartment with Hefton.  Soon after, Hefton introduced Hutchins to Garg, whom Hefton described as her boyfriend (although at the time Garg and Hefton were already secretly married).  Hefton asked if Garg could move into the apartment, Hutchins agreed, and, in January 2019, Garg moved into the apartment.

Although Hutchins' and Garg's relationship initially was fine, over the succeeding months the relationship deteriorated.  Hutchins will testify that Garg was "invasive," that he intruded into personal matters, and that he made comments and sent messages with sexual innuendo such as giving her the nickname "Spicy."  As the relationship deteriorated, Garg began to engage in random outbursts against Hutchins.  Following arguments at the end of June 2019, and concerned for her safety, Hutchins left the apartment to stay with her uncle, Michael Zigler (Victim-2 in the Superseding Indictment).

On July 2, 2019, Hutchins filed for a temporary protection order against Garg.  Rather than pursue the case, later that month, Hutchins entered into a settlement agreement whereby Garg agreed not to contact Hutchins for a year.  Despite that agreement, in August 2019, Hutchins received notice that Garg had applied for a job at Expedia, Hutchins' employer.  Hutchins notified Expedia of the no-contact agreement, and Garg was not hired.

UNITED STATES' TRIAL BRIEF - 2
*United States v. Sumit Garg,* CR21-045 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

## B. The Stalking Campaign

3

In January 2020, Hutchins began to receive emails with the subject "Hello

4

Gorgeous" from email addresses incorporating that phrase or a variation of it, such as

5

"hellogorgeous5[@]gmail.com," "helloogorgousdiary[@]gmail.com," and

6

"hgorgeous5[@]gmail.com."  Hello Gorgeous was a phrase that was on the cover page of

7

a diary that Hutchins had when Hutchins lived with Garg and Hefton.  Many of these

8

emails incorporated specific details of Hutchins' private life that had been documented in

9

her diary, including details of her romantic history that Hutchins had not shared with

10

others.

11

Over the next several months, Hutchins began to receive emails from email

12

addresses and social media accounts that spoofed the identities of a former boyfriend and

13

other people she knew.  Hutchins also discovered that fake Facebook and Instagram

14

accounts had been created in her name and used to message her family and friends.  On

15

April 20, 2020, Hutchins reported the email harassment and stalking to the Seattle Police

16

Department (SPD).  After Hutchins did this, Garg and Hefton began to make false police

17

reports claiming that they were the victims of stalking and harassment from email

18

accounts with names that incorporated variations on Hutchins' real email address or

19

variations of Garg's and Hefton's real email addresses.

20

Hefton, who is cooperating with the government, will testify (and other evidence

21

will show) that Garg was primarily responsible for the harassing emails and texts that

22

were sent to Hutchins.  Hefton will testify that, in truth, neither she nor Garg were

23

harassed by Hutchins or anyone else.  Hefton will testify that, instead, Garg and Hefton

24

conspired to send themselves what appeared to be harassing emails and texts and blamed

25

those emails and texts on Hutchins and other victims in this case.  Hefton also will testify

26

that Garg and she filed false reports with SPD in which they blamed Hutchins for emails

27

and texts to themselves that they themselves had sent.

Over time, Garg's stalking campaign grew to include additional victims, in an

ever-expanding circle with Hutchins at the center.  Thus, over time, the campaign grew to

UNITED STATES' TRIAL BRIEF - 3
*United States v. Sumit Garg,* CR21-045 JCC

include Hutchins' friends and family members, lawyers representing her in no-contact-order litigation against Garg and Hefton, police officers investigating the harassment, and even King County prosecutors involved in bringing charges against Garg in State court. The stalking campaign also grew increasingly violent, ultimately coming to include gruesome threats of rape, torture, and death.   Over time, Garg's stalking campaign involved thousands of emails sent from dozens of accounts set up for the purpose of stalking.  These included (1) accounts with names closely related to Hutchins' true email address, (2) accounts with names closely related to Garg's and Hefton's true email addresses, and (3) numerous other stalking accounts.

## C.  October 10, 2020

A particularly egregious episode of stalking took place on October 10, 2020.  That evening, at 7:05 p.m., Hutchins received a text message from an unknown number.  The message read, in part: "I will fuck you.  You fucked up bitch by filing a false domestic violence petition.  I will fuck you 100 times.  I will get you pregnant.  I will have anal." Approximately three minutes later, security camera footage at the Tower 12 apartment building, where Hutchins then lived, recorded a male in a dark jacket, light jeans, and Nike sneakers following residents into the lobby of the building.  The male was holding what appeared to be a smartphone in his right hand.  At 7:13 p.m., Hutchins received an email message from "sumitgargied92[@]gmail.com," an account with a name close to Garg's true email address, with the subject line "Hey babe."  The email attached two images of the inside of the lobby of the Tower 12 building and an image of the deli connected to the apartment building.  Metadata from the images indicate that they were taken on a Google Pixel 3a smartphone.

At trial, the government will introduce evidence to show that Garg was the intruder, and that he sent this email with the attached images.  For instance, the government will introduce Google location data for Garg's and Hefton's true Google accounts indicating that Garg and Hefton were in the area of Tower 12 minutes before, and shortly after, the text and email were sent.  In addition, location information for the stalking account sumitgargied92[@]gmail.com also indicates that user was in the same

UNITED STATES' TRIAL BRIEF - 4
*United States v. Sumit Garg*, CR21-045 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

location in the area of Tower 12.  Moreover, Hefton will confirm that she took Garg to the Tower 12 building on October 10, 2010, and that he went into the building to send messages.  Hefton and Hutchins are both also expected to testify that the person in the images captured by the security camera is, in fact, Garg.

### D.  October 31, 2020

Garg's stalking campaign continued after October 10, 2020.  For example, on October 26 or 27, 2020, Hutchins received an email stating "I will kill you."  On October 30, 2020, Hutchins received multiple emails including an email stating "I still want to fuck your brains out like I used to" and "there's nothing the courts can do to stop me." On October 31, 2020, Hutchins received an email saying "I will first rape you and then kill you."

Garg's false efforts to portray himself as the victim, rather than the perpetrator, also continued.  For example, on October 31, 2020, Garg and Hefton called SPD to complain that they were being harassed.  Garg and Hefton told the responding officer, Timothy Oliverson, that someone had climbed a fence into their yard and looked inside their shed.  Garg and Hefton showed Officer Oliverson two clips from their Ring camera that they claimed showed the intruder, who they claimed was Cesar Gonzalez Argandar (identified as Victim-3 in the Superseding Indictment), who was Hutchins' boyfriend. Garg also showed Officer Oliverson emails that appeared to be harassing emails which were delivered to Garg's phone while Officer Oliverson was at the Garg residence.

The government expects that Hefton will testify that the person depicted in the Ring video was actually Garg, and that the emails are emails that were sent earlier by Garg and/or Hefton and scheduled to be delivered while the officer was there.  In addition, other Ring video clips found on Garg's phone, which was seized when Garg was arrested the next day (clips which Garg did not provide to Officer Oliverson) show the supposed intruder's face and confirm that the supposed intruder was actually Garg, pretending to be an intruder, and not Gonzalez.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### E. Garg's November 1, 2020, Arrest

On November 1, 2020, SPD officers arrested Garg and seized his cellphone incident to that arrest. Immediately upon Garg's arrest, the volume of stalking emails dropped drastically, although Hefton will testify that she continued to send sporadic emails in an attempt to draw suspicion away from Garg. On November 6, 2020, Garg was charged with cyberstalking in King County Superior Court. On November 10, 2020, the King County Superior Court issued a Stalking Violence No-Contact Order prohibiting Garg from having any contact, direct or indirect, with Hutchins, Zigler, and Gonzalez. On November 13, 2020, Garg was released from State custody and was placed on home confinement with electronic monitoring.

Following Garg's release, his harassment campaign resumed with intensity. For instance, 30 minutes after receiving a notification that Garg had been released on electronic monitoring, Hutchins received a text that read "A few days in jail is no biggie for Garg. I hired to hitmen to take care of you. Don't worry. They won't be killing you. I have made other special arrangements. If I were you, I would run from WA ASAP." The next day, November 14, 2020, Hutchins received a text that read "I'm coming very soon. You will remember my dick. I'm going to ruin your pussy for other men and then dump your body in the snow. . . . "

Garg also sent emails and other communications stalking other victims, including Zigler, Gonzalez, Mark Blair (identified as Victim-7 in the Superseding Indictment) a lawyer who represented Hutchins in civil no-contact litigation with Garg, Kailey Kang (Victim-9 in the Superseding Indictment) an SPD detective who was investigating Garg, and Gary Ernsdorff (Victim-11 in the Superseding Indictment), a King County prosecutor involved in the State prosecution, as well as numerous other victims. Those emails included both harassing and threatening emails. As a result, on February 25, 2021, the State obtained warrants to arrest Garg and to search his residence and to seize various evidence, including electronic devices, including computers and cellphones. Garg was charged federally by complaint on March 5, 2021. Garg has been detained federally since that time.

UNITED STATES' TRIAL BRIEF - 6
*United States v. Sumit Garg,* CR21-045 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**F. The Evidence Concealed Behind Garg's Shed**

During the summer and fall of 2021, Hefton began a process that ultimately led to her cooperation in the government's investigation.  As part of that cooperation, Hefton's attorney informed the government that, prior to Garg's February 26, 2021, arrest, Garg and Hefton had hidden several items in a tarp behind a shed in the back yard of Garg's and Hefton's residence.  Hefton's attorney informed the government that the items that Garg had hidden included the clothes that he had worn on October 10, 2020, when he went to Hutchins's apartment building, took pictures, and sent them to her.

On August 12, 2021, Secret Service agents went to Garg and Hefton's residence.  With Hefton's consent, they looked behind the shed on the property.  There they found a tarp.  Wrapped inside the tarp were a black jacket, light pants, and black Nike shoes that appear to match the clothes that Garg wore on October 10, 2020.  Also inside the tarp were two cellular telephone and other electronic devices.

**G. The Current Charges Against Garg.**

On September 7, 2022, the grand jury returned a Superseding Indictment charging Garg with eight Counts.  Count 1 charges Garg with conspiracy, in violation of Title 18, United States Code, Section 371, to engage in stalking.  Counts 2-8 each charge Garg with stalking, in violation of Title 18, United States Code, Section 2261A.  Each of Counts 2-8 relates to a different victim.

### III.   LAW

**A. Conspiracy**

Section 371 makes it a crime for "two or more persons to conspire . . . to commit any offense against the United States . . . and one or more of such persons [to] do any act to effect the object of the conspiracy."  To convict a defendant of conspiracy, the government must prove that: (1) there was an agreement between two or more persons to commit a particular crime charged in the indictment; (2) each defendant became a member of the conspiracy knowing at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.  The jury must all agree as to a

1  particular overt act.  Ninth Circuit Model Jury Instructions 8.20; *see also*

2  *United States v. Falcone*, 311 U.S. 205, 210 (1940); *United States v. Montgomery*, 384

3  F.3d 1050, 1062 (9th Cir. 2004).

4        The agreement to engage in criminal activity between the conspirators need not be

   explicit, but may be inferred from circumstantial evidence.  *United States v. Sullivan*, 522

5  F.3d 967, 976 (9th Cir. 2008); *United States v. Morland*, 509 F.3d 1201, 1218

6  (9th Cir. 2007); *United States v. Thomas*, 586 F.2d 123, 127-32 (9th Cir. 1978).  Indeed,

7  the agreement may consist of nothing more than a tacit understanding.  *United States v.*

8  *Mohr*, 728 F.2d 1132, 1135 (8th Cir. 1984).  Proving the crime of conspiracy requires

9  proof of an overt act.  *Falcone*, 311 U.S. at 210.  The overt act need not itself be a crime;

10 its function is merely to show "that the conspiracy is operative."  *United States v.*

11 *Buckner*, 610 F.2d 570, 573 (9th Cir. 1979).  Knowledge of the objectives of the

12 conspiracy is an essential element.  *United States v. Rizk*, 660 F.3d 1125, 1134

13 (9th Cir. 2011).  However, similar to the agreement itself, "the government need not

14 prove knowledge with direct evidence; circumstantial evidence and the inferences drawn

15 from the evidence can sustain a conspiracy conviction."  *United States v. Wright*, 215

16 F.3d 1020, 1028 (9th Cir. 2000).  "Once a conspiracy is established[,] only a slight

17 connection to the conspiracy is necessary to support a conviction."  *United States v. Reed*,

18 575 F.3d 900, 924 (9th Cir. 2009) (quoting *United States v. Herrera-Gonzalez*, 263 F.3d

19 1092, 1095 (9th Cir. 2001)). The term "slight connection" means that a defendant need

20 not have known all the conspirators, participated in the conspiracy from its beginning,

   participated in all its enterprises, or known all its details.  *Id.*

21        One who joins an ongoing conspiracy is bound by all acts of coconspirators taken

22 in furtherance of the conspiracy.  *See, e.g.*, *United States v. Traylor*, 656 F.2d 1326, 1337

23 (9th Cir. 1981) (citing *United States v. Knight*, 416 F.2d 1181, 1184 (9th Cir. 1969)).  A

24 coconspirator is also responsible for all reasonably foreseeable substantive crimes

25 committed in furtherance of the conspiracy, even if he or she did not participate in or

26 have knowledge of their commission.  *See, e.g.*, *Pinkerton v. United States*, 328 U.S. 640

27 (1946); *United States v. Reed*, 726 F.2d 570, 580 (9th Cir. 1984); *United States v. Ferris*,

UNITED STATES' TRIAL BRIEF - 8
*United States v. Sumit Garg*, CR21-045 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

719 F.2d 1405, 1408 (9th Cir. 1983); *United States v. Shaprio*, 669 F.2d 593, 596 n.2 (9th Cir. 1982).  Thus, the act of one conspirator is the act of all.  *See, e.g.*, *Phillips v. United States*, 356 F.2d 297, 303 (9th Cir. 1966).

Finally, "[t]he rule is well established that the government in a conspiracy case may submit proof on the full scope of the conspiracy; it is not limited in its proof to the overt acts alleged in the indictment."  *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011); *accord United States v. Montgomery*, 384 F.3d 1050, 1061-62 (9th Cir. 2004) (acts that occurred within the temporal scope of the conspiracy and were inextricably intertwined with the conspiracy are not subject to Rule 404(b) analysis).  Moreover, such inextricably-intertwined acts are considered direct evidence of the offense.  *See United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1327 (9th Cir. 1992).

The government will prove the conspiracy in this case, in large part through the testimony of Hefton, who will testify that she agreed with Garg to stalk victims in the case, and to pretend that Garg and Hefton were the victims of the stalking, rather than the perpetrators of the stalking.

**B. Stalking**

The elements of stalking under 18 U.S.C. § 2261A are as follows:

First, a person used the mail, any interactive computer service or electronic communication system of interstate or foreign commerce, or any other facility of interstate or foreign commerce;

Second, the use of the mail, interactive computer service or electronic communication system or other facility of interstate or foreign commerce was undertaken with the intent to injure, harass, or intimidate another person; and

Third, during or as the result of the use of the mail, interactive computer service or electronic communication system or other facility of interstate commerce, the person who did so placed another person in reasonable fear of death or serious bodily injury to them or a member of their immediate family, or caused, attempted to cause, or would be reasonably expected to cause substantial emotional distress to the person or their immediate family member.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*See generally* 18 U.S.C. § 2261A;  *United States v. Wills*, 346 F.3d 476, 493 (4th Cir. 2003); *United States v. Fullmer*, 584 F.3d 132, 163 (3d Cir. 2009).

Under the statute, the terms "harass," "intimidate," and "substantial emotional distress" have their commonplace meanings.  *See United States v. Osinger*, 753 F.3d 939, 945 (9th Cir. 2014); *United States v. Conlan*, 786 F.3d 380, 386 (5th Cir. 2015).  The Ninth Circuit has specifically rejected a First Amendment challenge to the statute because it requires "both malicious intent on the part of the defendant and substantial harm to the victim."  *Osinger*, 753 F.3d at 944 (quoting *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012)).  The Internet is a facility of interstate commerce.  *United States v. Liton*, 311 Fed. Appx. 300 (11ᵗʰ Cir. 2009); *United States v. Wasson*, 426 F. Supp.3d 822 (D. Kansas 2019).

The government will prove the stalking in this case through the testimony of the victims of the stalking, as well as through emails, texts, and other documents that constituted the stalking.  The government also will prove that Garg and Hefton were the perpetrators of the stalking, including through the testimony of expert witnesses listed in the next section.

## C.  Expert Testimony

The government expects to call four expert witnesses.  The government has provided defense counsel these witnesses' *curricula vitae*, as well as summaries of their expected testimony.  The witnesses are: Forensic examiner Christopher Hansen and Investigative Analyst Megan Wood both of the United States Secret Service; and Seattle Police Department fingerprint examiners Kelli Anderson and Amanda Poast.

Mr. Hansen will testify to his forensic examination of Amazon server logs which indicate connections from Garg's work computer, an HP Elitebook 840 G6 issued by Amazon to user DTTSG, who is Garg.  Amazon logs indicate that this computer sent "DNS lookup" requests to Guerrillamail, an anonymous email service used to send stalker emails.  Mr. Hansen will also testify that Amazon logs indicate that user DTTSG downloaded and installed "ProtonVPN_win_v.1.17.5.exe" on his Deloitte work device.  ProtonVPN was used to send stalker emails.  Mr. Hansen will also testify to his forensic

1  examination of the HP Elitebook 840 G6.  Based on his forensic examination of the HP
2  Elitebook, he identified forensic artifacts which indicate that images sent by stalker email
3  accounts existed on the HP Elitebook prior to being sent in emails.

4      Mr. Hansen also examined Garg's Google Pixel 3a.  Mr. Hansen will testify that
5  he recovered from the Google Pixel 3a WhatsApp messages between Garg and Hefton
6  discussing the stalking/harassment campaign, and a screenshot of a Google Chrome
7  browser with tabs indicating logins to stalker accounts; and a "pop-up" window with an
8  image of the LinkedIn profile of "Cesar Gonzalez Argandar."  Among other forensic
9  artifacts, Mr. Hansen will testify that three images sent as attachments to an email on
10 October 10, 2020 at 7:11 pm PDT from the email stalker account
11 sumitgargied92@gmail.com to a victim account were all taken with Garg's Google Pixel
12 3a.  Mr. Hansen will also testify that he recovered "Ring" videos from the Google Pixel
13 3A with the date stamp October 31, 2020.  The Ring videos appear to show the defendant
14 and Hefton "setting up" a video shot by adjusting the camera to point at a specific
15 location in the backyard.  Also recovered from the Google Pixel 3a are Ring videos a few
16 minutes later which record a hooded figure jumping over the fence into defendant's
17 backyard. The Ring videos of an individual jumping over the fence were provided to the
18 police with a claim that they show Gonzalez trespassing on defendant's property.  Other
   videos indicate that Garg was the actual hooded figure.

19      Ms. Wood will testify concerning IP addresses used by Garg and Hefton to access
20 emails from their true email accounts, as well as IP addresses from which they
21 communicated with third parties.  In particular, Ms. Wood will testify concerning
22 instances of IP overlap – that is, instances in which particular IP addresses were used by
23 one or both Garg and/or Hefton, and were also used to send threatening and/or harassing
24 emails or are otherwise listed in account IP logs. Ms. Wood will testify that, in her
25 experience, IP overlap, and particularly multiple instances of IP overlap, is evidence of
   common control over, or access to, accounts that used the IP in question.

26      Ms. Wood will also testify concerning her review of location data provided by
27 Google relating to various accounts.  In particular, Ms. Wood will testify concerning

UNITED STATES' TRIAL BRIEF - 11
*United States v. Sumit Garg,* CR21-045 JCC

location data for October 10, 2020.  Ms. Wood will testify that at 6:49 p.m., Garg's true

email account sumitgarg90[@]gmail.com requested directions to Tower 12 Apartment

Homes.  According to Google Maps location data, the request was made from 47.617648,

-122.355174, within blocks of the Tower 12 building.  At 6:53 PM, the account

sumitgarg90[@]gmail.com viewed an area using Google Maps with the coordinates

47.611845, -122.342212, a location that according to Google Maps is directly in front of

Tower 12.  At 7:58 p.m., the harasser account sumitgargied92[@]gmail.com searched for

"have a heart belltown online order." According to Google location data, the phone on

which this search was conducted was also at 47.617648, -122.355174. At 8:09 p.m., the

account clhefton[@]gmail.com requested directions to "Home."  According to Google

Maps location data, this request was also made from 47.617648, -122.355174.  Ms.

Wood will also testify that this Google location evidence indicates that devices utilizing

the accounts sumitgarg90[@]gmail.com, clhefton[@]gmail.com, and the stalking account

sumitgargied92[@]gmail.com, were all at the same location, and in close proximity to the

Tower 12 building, on October 10, 2020.

Ms. Wood will also testify concerning Google search history for Garg's true

account sumitgarg90[@]gmail.com.  In particular, she will testify regarding visits to the

Proton VPN and Guerrilla Mail websites, as well as searches for items such as "ip

address how hard is it to fake."  Additionally, she will testify to numerous searches

related to victims Hutchins and Gonzalez, including visits to their social media pages.

Ms. Wood also will testify concerning emails sent by Garg's and Hefton's true email

accounts and by various harasser accounts, and about the relative timing of those emails.

The government will also call Kelli Anderson, a Senior Latent Print Examiner

with SPD. Ms. Anderson performed fingerprint analysis on Hutchins' diary. Ms.

Anderson will testify that Garg's fingerprints were found on Hutchins' diary. The United

States also expects to call Amanda Poast, a Latent Print Examiner with SPD. Ms. Poast

performed fingerprint analysis on a package that Garg and Hefton reported was left in

UNITED STATES' TRIAL BRIEF - 12
*United States v. Sumit Garg,* CR21-045 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  their mailbox on December 6, 2020.  No fingerprints were found on the envelope or its

2  contents.

3      DATED:  October 3, 2022.

4

5

6                                              Respectfully submitted,

7                                              NICHOLAS W. BROWN
                                               United States Attorney

8
                                                  */s/ Andrew C. Friedman*
9
                                               _____
10                                             ANDREW C. FRIEDMAN
                                               Assistant United States Attorney
11
                                                  */s/ Anthony Teelucksingh*
12
                                               _____
13                                             ANTHONY TEELUCKSINGH
                                               Senior Trial Attorney
14                                             Computer Crime and Intellectual
                                                   Property Section
15                                             United States Department of Justice

16

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES' TRIAL BRIEF - 13
*United States v. Sumit Garg,* CR21-045 JCC