UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>        v.<br><br>SUMIT GARG,<br><br>                              Defendant. | Case No. CR21-0045-JCC<br><br>ORDER GRANTING DEFENDANT'S MOTION TO WITHDRAW STANDBY COUNSEL AND APPOINTING NEW STANDBY COUNSEL |

INTRODUCTION

This matter is before the Court on Defendant Sumit Garg's ex parte Motion to Remove Standby Counsel, Dkt. 446, as referred to the undersigned by the Honorable John C. Coughenour.  Mr. Garg's standby counsel, Stephan Illa, filed a Memorandum in Support of Mr. Garg's Motion.  Dkt. 476.  The Court held a hearing on April 24, 2023, giving Mr. Garg and Mr. Illa an opportunity to be heard.  Dkt. 507.  Having considered the submissions, the hearing, the balance of the record, and the governing law, the Court GRANTS Mr. Garg's motion.  The Court further instructs the CJA panel to appoint new standby counsel to this case.  To allay any confusion as to the role of standby counsel, this order sets out the relevant background, the

1   Court's prior relevant rulings, reviews relevant caselaw, and defines standby counsel's duties and

2   obligations to Mr. Garg.

3   BACKGROUND

4       Mr. Garg is charged with conspiracy to engage in cyberstalking, cyberstalking in

5   violation of a criminal order, and cyberstalking.  Dkt. 117.  Following his arrest in March 2021,

6   Robert Goldsmith was appointed to serve as Mr. Garg's counsel.  Dkt. 7.  On June 28, 2021,[1]

7   Mr. Garg moved to have Mr. Goldsmith removed as counsel and Peter Camiel appointed as

8   substitute counsel, citing numerous complaints with Mr. Goldsmith's representation.  Dkt. 54.

9   The motion was referred to the undersigned.  Mr. Goldsmith filed a response detailing his

10   extensive advocacy for Mr. Garg.  Dkt. 56.  On July 27, 2021, the Court held a hearing on Mr.

11   Garg's motion.  Dkt. 60.  In that hearing, the Court discussed Mr. Garg's conflict with Mr.

12   Goldsmith at length, but declined to remove Mr. Goldsmith, instead setting out the matter for a

13   status hearing in six weeks' time to allow Mr. Garg to explore the possibility of having co-

14   counsel appointed to his case.  *Id.*

15       On August 6, 2021, Mr. Garg moved to proceed *pro se*.  Dkt. 61.  Thereafter, on August

16   26, 2021, Mr. Garg moved the Court to appoint standby counsel to assist him with his defense.

17   Dkt. 67.  Both motions were referred to the undersigned.  On September 2, 2021, the Court held

18   a hearing on both motions.  Dkt. 70.  That same day, Mr. Garg mailed a letter notifying the Court

19   that he had changed his mind and wished to retain Mr. Goldsmith as counsel.[2]  Dkt. 76.  Despite

20   this, in the hearing on September 2, 2021, Mr. Garg reiterated his desire to proceed *pro se*, but

21

22       [1] Unless otherwise stated, the dates cited reflect the dates on which Mr. Garg's filings were docketed by the Court, not the dates they were executed by Mr. Garg or mailed by Mr. Garg for filing.

23       [2] This letter was not received by the Court until September 9, 2021.  Dkt. 76.  On September 15, 2021, the Court entered an order denying as moot Mr. Garg's request to retain Mr. Goldsmith as counsel. Dkt. 81.

ORDER GRANTING DEFENDANT'S MOTION
TO WITHDRAW STANDBY COUNSEL AND
APPOINTING NEW STANDBY COUNSEL - 2

1    with the assistance of standby counsel performing many of the functions of counsel at Mr.

2    Garg's direction.  Dkt. 70; *see also* Dkt. 71.  The Court emphasized to Mr. Garg that standby

3    counsel does not act as counsel at the direction of the defendant, but instead assists with the

4    orderly administration of trial.  *Id.*  Ultimately, Mr. Garg indicated a willingness to work with

5    newly appointed counsel, so the Court granted Mr. Garg's motion to withdraw Mr. Goldsmith

6    and ordered the appointment of new counsel.  *Id.*  The Court further informed Mr. Garg that he

7    could renew his request to proceed *pro se* at any time.  *Id.*  On September 7, 2021, Mr. Garg filed

8    objections to the Court's September 2, 2021 construction of the role of standby counsel and

9    asked the Court "to make it clear in writing on the record what specific assistance is available to

10   a defendant who wishes to represent himself from jail/prison . . . ."  Dkt. 73 at 8.

11        Mr. Camiel was appointed as Mr. Garg's counsel on September 7, 2021.  Dkt. 72.  On

12   September 10, 2021, Mr. Garg filed a letter stating, "I just want to express my gratitude to all

13   involved . . .  for appointing me my dream counsel, Peter [C]amiel.  I am just so happy . . . ."

14   Dkt. 77.

15        One year later, on September 6, 2022, Mr. Garg filed a *pro se* motion to discuss his

16   concerns about his access to discovery in the case.  Dkt. 116.  The Court terminated this motion

17   as improper because Mr. Garg was represented at the time of filing, and was therefore prohibited

18   from acting on his own behalf.  Dkt. 120 (citing CrR 1(a) and LCR 83.2(b)).  Shortly thereafter,

19   on September 19, 2022, Mr. Camiel filed a lengthy motion to suppress evidence.  Dkts. 128, 129.

20        On October 5, 2022, Mr. Garg filed another *pro se* motion, which further detailed his

21   frustrations with discovery, as well as his frustrations with Mr. Camiel's representation.  Dkt.

22   151.  The Court terminated this motion as improper on October 6, 2022.  Dkt. 152 (citing CrR

23

ORDER GRANTING DEFENDANT'S MOTION
TO WITHDRAW STANDBY COUNSEL AND
APPOINTING NEW STANDBY COUNSEL - 3

1   1(a) and LCR 83.2(b)).  The next day, the Court denied Mr. Camiel's motion to suppress

2   evidence.  Dkt. 153.

3         Subsequently, on October 9, 2022, Mr. Camiel filed a motion to withdraw as Mr. Garg's

4   attorney.  Dkt. 155.  Mr. Camiel noted he was moving to withdraw because Mr. Garg had asked

5   him to and emphasized that he had spent considerable time preparing for Mr. Garg's case,

6   including by visiting Mr. Garg thirty-five to forty times in custody and speaking with Mr. Garg

7   daily by telephone.  Dkt. 156 at 3.  *See also* Dkts. 160 & 161 (Defendant's motions to appoint

8   new counsel).  Mr. Camiel's motion to withdraw was referred to the undersigned.

9         On October 13, 2022, in a hearing on the matter, the Court granted Mr. Camiel's motion

10  to withdraw and ordered that new counsel be appointed to Mr. Garg.  Dkt. 159.  Prior to doing

11  so, the Court advised Mr. Garg that once Mr. Camiel was discharged, Mr. Garg would lose all

12  access to his services and could not later choose to be represented by him.  *Id.*

13        On October 20, 2022, Mr. Garg renewed his motion to proceed *pro se*.  See Dkts. 167,

14  168.  Thereafter, on October 21, 2022, Stephan Illa was appointed as Mr. Garg's counsel.  Dkt.

15  166.  Mr. Illa then filed a memorandum in support of Mr. Garg's motion to proceed *pro se*.  Dkt.

16  169.  In that memorandum, Mr. Illa noted the potential for the Court to appoint standby counsel

17  to assist with Mr. Garg's representation and proposed specific language delineating and defining

18  standby counsel's role to be included in any order so appointing.  *Id.* at 3–5.

19        On November 7, 2022, the Court held a hearing on Mr. Garg's motion to proceed *pro se*.

20  Dkt. 173.  After conducting a full *Faretta* hearing, the Court granted Mr. Garg's motion and

21  appointed Mr. Illa as standby counsel.  *Id.*  Prior to doing so, however, the Court emphasized to

22  Mr. Garg that the pretrial motions deadline in the case had already passed, and that there was no

23  guarantee the deadline would be extended just because Mr. Garg was now *pro se*.  *Id.*  The Court

also explained to Mr. Garg the general boundaries of standby counsel's role in the Ninth Circuit.

*Id.*

On November 8, 2022, the Court entered a written order granting Mr. Garg's motion to proceed *pro se* and appointing Mr. Illa as standby counsel.  Dkt. 174.  In doing so, the Court adopted Mr. Illa's proposed language , defining standby counsel's role as follows:

> . . . .
> 2.      Because Mr. Garg is representing himself, Mr. Garg has the right to make final decisions on all matters relating to the conduct of the case, including strategic and tactical decisions.
> 3.      Standby counsel may respond to Mr. Garg's specific requests for legal advice and may advise him of potential benefits and concerns counsel perceives and may bring to his attention steps that could be potentially beneficial or counterproductive to him; and
> 4.      Standby counsel must be fully prepared to assume the role of counsel of record and take over representation if ordered to do so by the Court.

Dkt. 174 at 3–4.

Shortly thereafter, Mr. Garg filed two omnibus motions to effectively represent himself, citing the large volume of discovery in the case and asking the Court for various resources to assist him in preparation of his defense, including investigative and paralegal services.  Dkts. 175, 176.  *See also* Dkt. 182 (Mr. Garg's motion for appointment of paralegal services).  By separate motion, Mr. Garg also moved for the appointment of a computer expert.  Dkt. 186.

Finally, Mr. Garg moved the Court to extend the pretrial motions deadline, arguing there was good cause to extend the deadline because Mr. Garg had not been able to fully examine all discovery in the case before the deadline had passed.  Dkt. 180 at 8–12.

On November 23, 2022, the Court entered an order granting in part and denying in part Mr. Garg's omnibus motions.  Dkt. 192.  In that order, the Court noted that Mr. Garg was authorized to utilize up to $800 in paralegal and investigative services for each type of service provider without authorization by the Court, and instructed Mr. Garg to "ask standby counsel to

assist him in acquiring those services" should he need them.  *Id.* at 2.  The Court further

instructed Mr. Garg that standby counsel could assist him in filing exhibits with the Court if Mr.

Garg was unable to file them using conventional methods.  *Id.* at 5.  The Court reiterated that if

Mr. Garg had specific legal questions related to his case, he could consult with standby counsel

about them.  *Id.*  Finally, the Court granted Mr. Garg's motion to appoint a computer expert, Dkt.

186, instructing Mr. Garg to work with standby counsel to identify one.[3]  *Id.* at 3 n.3.

Subsequently, on December 7, 2022, the Court denied Mr. Garg's motion to extend the

pretrial motions deadline.  Dkt. 207.  In doing so, the Court noted that (1) the deadline had

already passed when Mr. Garg moved to proceed *pro se*; and (2) the Court had explained to Mr.

Garg in the hearing on that motion that if he proceeded *pro se*, there was no guarantee he would

be permitted to file further pretrial motions.  *Id.* at 2.  The Court further noted that while Mr.

Garg may not have had full access to discovery in the case prior to the pretrial motions deadline

passing, Mr. Camiel (his attorney at the time) had, and filed a lengthy motion to suppress

evidence, which the Court denied.  *Id.*  Per the Court, "Defendant is not entitled to relitigate

issues that have already been decided by the Court just because he is now *pro se*."  *Id.*

On January 5, 2023, Mr. Garg moved the Court to replace Mr. Illa with Mr. Camiel as

standby counsel, citing Mr. Camiel's familiarity with the case and Mr. Garg's desire to use the

computer expert Mr. Camiel had previously retained.  Dkt. 247 at 2–5.  On January 12, 2023, the

Court denied Mr. Garg's motion.  Dkt. 253.  In doing so, the Court noted that Mr. Garg was

---

[3] On November 30, 2022, Defendant filed a third omnibus motion to effectively represent himself. Dkt. 202.  In that motion, he requested that the Court amend the role of standby counsel to include the following responsibilities: "(1) Provide copies of [Defendant's] motions filed at least until the appointment of paralegal services[;] (2) Assist in finding and hiring of Computer Expert[;] (3) Assist in finding and hiring of paralegal services[;] (4) Allowed to transfer materials from [Defendant's] issued laptop to print and/or send to Computer Expert[.]"  *Id.* at 3.  On December 23, 2022, the Court denied these requests, noting that Defendant had either subsequently withdrawn them, or the Court had previously granted or denied them.  *Id.* at 2.

ORDER GRANTING DEFENDANT'S MOTION
TO WITHDRAW STANDBY COUNSEL AND
APPOINTING NEW STANDBY COUNSEL - 6

previously represented by Mr. Camiel, but had decided to proceed *pro se*, and that because standby counsel's role was limited in nature, current standby counsel was able to adequately assume the duties. *Id.*

Mr. Garg then filed additional motions to appoint an investigator and a paralegal. Dkts. 259, 268. On January 30, 2023, the Court denied both motions on the grounds that (1) Mr. Camiel had already diligently investigated the case, (2) the pretrial motions deadline had already passed, and (3) the Court had previously informed Mr. Garg that he could work with standby counsel to obtain $800 worth of services for each service provider type without Court order. Dkt. 292 at 1–2. Thereafter, Mr. Garg filed a motion seeking to clarify the role of standby counsel. Dkt. 314. In that motion, Mr. Garg contended the Court's and government's instructions as to the role and responsibilities of standby counsel were ambiguous and contradictory. *Id.* at 1–3.

Subsequently, on February 16, 2023, Mr. Garg moved to appoint specific individuals as computer expert and paralegal. Dkts. 326, 327. He asked for $7,500 to retain the computer expert, Dkt. 326 at 1 n.1, and indicated he needed funds for the paralegal to perform 520 hours of work to, among other things, conduct legal research, find an investigator, and access PACER, Dkt. 327 at 9–10. On March 20, 2023, the Court entered an order denying the motions. Dkt. 422. The Court emphasized that Mr. Garg was not entitled to unlimited funds to prepare his defense, noting that given the current posture of the case and the fact that Mr. Camiel had already retained a computer expert, who presumably had conducted an analysis of the devices at issue, Mr. Garg's requests were unreasonable. *Id.* at 1–2. The Court also addressed Mr. Garg's request that it clarify the role of standby counsel, providing that "[i]n deciding to represent himself *pro se*, it is Defendant's responsibility to research and prepare to present his defense[,]"

1  but that standby counsel "'may respond to [Defendant's] specific requests for legal advice'" and

2  "help Defendant with tasks he is unable to accomplish while incarcerated." *Id.* at 2.  The Court

3  further instructed Mr. Garg to consult with standby counsel to "determine the exact bounds of the

4  role, in line with these obligations previously set forth by the Court." *Id.*

5        On March 30, 2023, Mr. Garg moved to remove Mr. Illa as standby counsel.  Dkt. 446.

6  On April 12, 2023, Mr. Illa filed a memorandum in support of removal.  Dkt. 476.  On April 17,

7  2023, Mr. Garg filed an additional memorandum, asking the Court to assign multiple roles and

8  responsibilities to any new standby counsel it may appoint.  Dkt. 488 at 6–7.

9        On April 24, 2023, the Court held a hearing on Mr. Garg's motion to remove Mr. Illa as

10  standby counsel.  *See* Dkt. 507.  After concluding that the relationship of trust between Mr. Garg

11  and Mr. Illa was irretrievably broken, the Court granted the motion.  *Id.*  The Court now instructs

12  the CJA panel to appoint new standby counsel to this case.  In doing so, the Court sets forth

13  standby counsel's duties and obligations to Mr. Garg below.

<u>DISCUSSION</u>

14

15        In *Faretta v. California*, 422 U.S. 806, 819–20 (1975), the Supreme Court held that a

16  criminal defendant has a constitutional right to decline the assistance of counsel and represent

17  himself at trial.  When a defendant is representing himself, the court may appoint standby

18  counsel to aid the defendant if he requests help, and to be available to represent the defendant if

19  his self-representation is terminated.  *Id.* at 834 n.46; *see also McKaskle v. Wiggins*, 465 U.S.

20  168, 176–77 (1984).  In the Ninth Circuit, the term "standby counsel" refers to an "attorney

21  appointed by the court to be prepared to represent the defendant if the defendant's self-

22  representation is terminated." *United States v. Salemo*, 81 F.3d 1453, 1456 n.2 (9th Cir. 1996).

23

1    Although a court may appoint standby counsel for a self-represented defendant, a

2    defendant who chooses to represent himself has no right to have standby counsel appointed.  *See*

3    *United States v. Mendez–Sanchez*, 563 F.3d 935, 947 (9th Cir. 2009) (stating that '"under our

4    established precedent there is no right to the assistance of standby counsel."); *United States v.*

5    *Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981) ("A criminal defendant does not have an absolute

6    right to both self-representation and the assistance of counsel.").  "*Faretta* does not require a trial

7    judge to permit 'hybrid' representation . . . ."  *McKaskle*, 465 U.S. at 183.  "A criminal defendant

8    can be represented by counsel or he can represent himself, but the law does not require that he be

9    allowed to do both."  *Burleson v. Kernan*, No. C 05-1263 SI (PR), 2007 WL 3478432, at *16

10   (N.D. Cal. Nov. 15, 2007).  Moreover, if a trial court does appoint standby counsel, the

11   appointment does not give rise to representation of counsel within the meaning of the Sixth

12   Amendment because counsel cannot perform most of the basic attorney functions without

13   interfering with the defendant's *Faretta* rights.  *Id.*

14   To that end, courts have held that the district court has "broad discretion to guide what, if

15   any, assistance standby, or advisory, counsel may provide to a defendant conducting his own

16   defense."  *United States v. Lawrence*, 161 F.3d 250, 253 (4th Cir. 1998).  *See also United States*

17   *v. Brown*, No. 91-5088, 1993 WL 998, at *3 (4th Cir. Jan. 6, 1993) ("Once a district court

18   appoints standby counsel, it cannot permit counsel to interfere with the defendant's right to self-

19   representation[,]" and "can place reasonable limitations on the standby counsel's actions and the

20   defendant's use of such counsel."); *United States v. Nivica*, 887 F.2d 1110, 1121 (1st Cir. 1989)

21   (" . . . if the district court had discretion to deny hybrid representation outright, it had discretion,

22   in granting defendant's request for hybrid representation, to place reasonable limitations and

23   conditions upon the arrangement."); *Nelson v. Clark*, No. CV 19-5276-AB (JPR), 2022 WL

3012177, at *12 (C.D. Cal. June 7, 2022) (holding that there was "no merit to Petitioner's claim that the trial court hindered his ability to represent himself by instructing standby counsel not to assist him" because he "had no right to the assistance of standby counsel while representing himself. . . . Rather, standby counsel's role was precisely what the name implies: namely, to stand by and take over the defense if Petitioner became unable or unwilling to represent himself."); *Williams v. Harrington*, No. CV 06-6367-VBF JEM, 2010 WL 5138898, at *25 (C.D. Cal. Oct. 21, 2010), report and recommendation adopted, No. CV 06-6367-VBF JEM, 2010 WL 5127666 (C.D. Cal. Dec. 8, 2010) (holding that because a self-represented defendant has no right to standby or advisory counsel, the defendant "had no constitutional right to consult with standby counsel during the time he was representing himself and the trial court had no obligation to enable him to do so."); *Burleson*, 2007 WL 3478432, at *16 ("There was no violation of [defendant's] Sixth or Fourteenth Amendment rights in the restriction on his communication with standby counsel.  Because [defendant] had no right to advisory counsel, the trial court's order prohibiting standby counsel from giving legal advice did not violate [defendant's] constitutional rights.").

For example, in *United States v. Pardun*, No. CR-05-126-RHW-12, 2005 WL 8165535, at *6 (E.D. Wash. Dec. 8, 2005), the defendant requested appointment of standby counsel to do the following:

> 1. Act as liaison between accused and the court, and prosecutor, in confirming motions, coordinating discovery, interviews, evidence, etc.; 2. Provide forms, including subpoena forms, court forms, etc.; 3. Assist the investigator investigate the circumstances relating to Defendant's case; [and] 4. Perform any other duties logically associated with appointed counsel that would satisfy the right of Defendant to access the materials and tools necessary to prepare an adequate defense.

The court determined that the defendant's "request for assistance from standby counsel [went] above and beyond the duties contemplated by courts when appointing standby counsel." *Id.* The court explained that it had identified for the defendant "all those areas in which it would be beneficial to have counsel, including filing of motions, acting as a liaison between the court and the prosecutor, having access to forms, assisting the investigator, and performing of the other duties that appointed counsel would have done had Defendant not opted to proceed *pro se*." *Id.* Per the court, by "knowingly and voluntarily waiving the right to have counsel undertake all these tasks," it was now the defendant's job "to communicate to the Court, to organize the discovery, and to prepare for trial, not [standby counsel's]." *Id.* Thus, instead of requiring standby counsel to do as the defendant requested, the court asked him to "assist Defendant in preparing for trial, which include[d] providing advice regarding courtroom protocol, the rules of criminal procedure, and the rules of evidence[,]" but did not include "providing legal research, providing forms, or continuing to investigate and prepare this case for trial." *Id.*

Further, in *United States v. Youker*, No. 2:14-CR-0152-SMJ-1, 2015 WL 6828702, at *3 (E.D. Wash. Nov. 6, 2015), aff'd, 718 F. App'x 492 (9th Cir. 2017), the court directed standby counsel to "serve as an intermediary between Defendant and the private investigator, . . . keep and maintain any discovery that is too sensitive or inappropriate for Defendant to possess permanently in confinement, and . . . assist Defendant with formatting and structuring motions so as to comply with basic criminal procedure." Standby counsel was not, however, to "act on Defendant's behalf without clear direction or invitation from Defendant[,]" nor was he to "direct any investigation of the case, request discovery, or file motions unless Defendant expressly request[ed] such assistance." *Id.*

Here, Defendant requests that standby counsel be required to:[4]

a) Assist in the procurement of necessary ancillary services[;] b) Handle the CJA forms, vouchers, and billing for defendant's ancillary services and other funding requirements such as the procurement of transcripts[;] c) Assist in filing exhibits that the defendant cannot file such as audio/video/pictures and/or other such items[;] d) Procure specific dockets from PACER if the defendant provides accurate citations for specific cases[;] e) Develop sufficient familiarity with the facts of the case and the technological landscape in order to adequately respond to defendant's specific legal questions[;] f) Be reasonably available to the defendant via email[;] g) Be fully prepared to assume any other responsibilities that may arise during the course of representation if ordered to do so by the Court.

Dkt. 488 at 6–7.

Considering the aforementioned precedent, the Court's prior rulings on this matter, and the current posture of the case, the Court hereby ORDERS:

1.      Because Mr. Garg is representing himself, Mr. Garg has the right to make final decisions on all matters relating to the conduct of the case, including strategic and tactical decisions.

2.      Mr. Garg is responsible for researching and preparing to present his defense.

3.      Standby counsel may respond to Mr. Garg's specific requests for legal advice and may advise him of potential benefits and concerns counsel perceives and may bring to his attention steps that could be potentially beneficial or counterproductive to him.

4.      Standby counsel may assist Mr. Garg with filing exhibits if Mr. Garg is unable to do so himself using conventional methods.

---

[4] In his memorandum regarding the role of standby counsel, Dkt. 488, Mr. Garg cites cases in which the court has assigned certain duties and responsibilities, such as facilitating the defendant's review of discovery, to standby counsel. *Id.* at 2 (citing, e.g., *United States v. Eklund*, 3:18-CR-00035-SLG-MMS, 2020 WL 6947373, at *1 (D. Alaska Nov. 25, 2020); *United States v. Youker*, 14-CR-00152-SMJ-1, 2015 WL 3658167, at *5 (E.D. Wash. June 12, 2015), aff'd (Aug. 10, 2015), aff'd, 718 Fed. Appx. 492 (9th Cir. 2017)). While the court had discretion to assign such duties to standby counsel, it was not obligated to do so.

5.      Standby counsel may assist Mr. Garg with completing forms, vouchers, etc., if (1) Mr. Garg is unable to complete them due to restrictions placed on Mr. Garg while detained, and (2) standby counsel determines they are relevant to the preparation of Mr. Garg's defense at trial.

6.      At Mr. Garg's request and with his direction, standby counsel may procure specific documents from PACER, such as sample motions in limine or jury instructions, if standby counsel determines the volume of such requests is reasonable and they are relevant[5] to Mr. Garg's preparation of his defense at trial.

7.      Standby counsel may assist Mr. Garg in procuring up to $800 in ancillary services for each service provider type (i.e., paralegal and investigator services).[6]

8.      Standby counsel must be fully prepared to assume the role of counsel of record and take over representation if ordered to do so by the Court.

<u>CONCLUSION</u>

Mr. Garg's Motion to Remove Standby Counsel, Dkt. 446, is GRANTED.  The CJA panel is ORDERED to appoint new standby counsel, who shall act in the manner described above.

Dated this 3rd day of May, 2023.

S. KATE VAUGHAN
United States Magistrate Judge

---

[5] This qualification is necessary due to Mr. Garg's history of voluminous filings; however, nothing herein impacts Mr. Garg's ability to determine his own defense strategy.

[6] Mr. Garg has previously moved the Court to order ancillary services in excess of this amount. *See* Dkts. 326, 327.  Because the pretrial motions deadline in this case has long passed, the Court has denied Mr. Garg's motions.  *See* Dkt. 422.  Absent a separate order from the Court granting Mr. Garg access to such services, standby counsel is not required to assist Mr. Garg in procuring them.

ORDER GRANTING DEFENDANT'S MOTION
TO WITHDRAW STANDBY COUNSEL AND
APPOINTING NEW STANDBY COUNSEL - 13