THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>SUMIT GARG,<br><br>　　　　　　　Defendant. | CASE NO. CR21-0045-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion to compel the reinstatement of an expired plea offer.[1] (*See generally* Dkt. No. 654.) Defendant advances two arguments in support of his motion. First, Defendant alleges that the Government is vindictively refusing to reextend a plea offer it previously made because he is proceeding *pro se*. (*See id*.) Second, Defendant alleges that his then-existing counsel was ineffective in advising him during plea discussions. (*Id.*) On this basis, Defendant now petitions the Court to compel the Government to renew its plea offer. (*Id.*)

The Government, in turn, petitions the Court to deny Defendant's motion, at least as it relates to his vindictive prosecution claim. (*See generally* Dkt. No. 693.) It further petitions the Court to (1) grant a separate motion finding that Defendant has waived his attorney-client

---

[1] Defendant self-styles his motion as a "Motion for Relief from Vindictive *Faretta* Penalty and to Preserve *Lafler* Issue." (Dkt. No. 654.)

privilege and, (2) order his previous counsel to produce documents in response to a Government subpoena.[2] (Dkt. No. 693.)

For the reasons described herein, the Court DENIES Defendant's request to reinstate his original plea offer and FINDS that Defendant waived his attorney-client privilege when he filed the underlying motion (Dkt. No. 654).

A.  **Defendant's Vindictive Prosecution Claim**

In his underlying motion, Defendant alleges that "[as a] response to the defendant exercising his Sixth Amendment Right to Represent Himself, the government intends to impermissibly punish the defendant by jacking up his guideline sentence." (*See* Dkt. No. 654. at 1–2.) Defendant asserts what is essentially a vindictive prosecution claim.

To establish a claim of vindictiveness, a defendant must make a threshold showing that charges of increased severity were brought because he "exercised a statutory, procedural, or constitutional right in circumstances that give rise to an appearance of vindictiveness." *United States v. Gilbert*, 266 F.3d 1180, 1186 (9th Cir. 2001) (quoting *United States v. Noushfar*, 78 F.3d 1442, 1446 (9th Cir. 1996)). When there is no evidence of actual vindictiveness, a claimant may base their claim on the appearance of vindictiveness. *Id*. The appearance of vindictiveness test is not a *per se* rule striking down any increased charge following any act by a defendant. *Id*. Nor does the appearance of vindictiveness test embody the *post hoc ergo propter hoc* fallacy. *United States v. Robison*, 644 F.2d 1270, 1273 (9th Cir. 1981); *United States v. Linton*, 655 F.2d 930 (9th Cir. 1980). Indeed, the link of vindictiveness cannot be inferred simply because the prosecutor's actions followed the exercise of a right. *United States v. Robison*, 644 F.2d at 1273. Rather, the appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for

---

[2] The Government seeks relevant information to respond to Defendant's *Lafler* claim alleging ineffective assistance of counsel during the plea-bargaining process. (*See generally* Dkt. No. 654.)

hostility or a punitive animus towards the defendant because he has exercised his specific legal rights. *Id.*

Upon careful review of the factual record, the Court is satisfied that Defendant's vindictive prosecution claim is without merit. A brief recitation of the relevant facts illustrates the point. When the Government made its original plea offer on April 7, 2022, it proposed a plea to a single count with a five-year statutory maximum. (*See* Dkt. No. 693-2 at 2.) Shortly thereafter, Defendant's then-attorney, Mr. Camiel, informed the Government of a counterproposal in which Defendant would plead guilty to two counts of telephone harassment for a total recommended sentence of imprisonment of four years. (*Id*. At 4.) The Government ultimately accepted the counterproposal and, on July 15, 2022, sent Mr. Camiel a plea agreement consistent with those terms. (*Id*. at 6.) However, after reviewing the proposal, Defendant sought to make additional alterations. (*Id.* at 8.)

Following an exchange with Mr. Camiel regarding Defendant's reservations, the Government issued a revised plea agreement that Defendant again rejected. (*See id.* at 12.) In response to Defendant's rejections, AUSA Friedman conferred with co-counsel. During the process of conferring with co-counsel, the Government discovered an error in its sentencing range calculation.[3] The next day, on August 2, 2022, AUSA Friedman spoke with Mr. Camiel where he noted the fact that Defendant's sentencing range was higher than originally calculated. (*Id.* at 9.) Following their conversation, AUSA Friedman sent Mr. Camiel a further-revised plea agreement to reflect Defendant's correct sentencing range. (*Id*. at 21.) AUSA Friedman noted that, following trial, the Government would seek a guideline sentence between 87 and 108

---

[3] The Government's initial calculation of Defendant's sentencing range failed to include a two-level upward adjustment which would increase Defendant's offense level to 29 and his sentencing range to 87–108 months. Specifically, the Government overlooked both the leadership and official-victim adjustments. (*See* Dkt. No. 693 at 18–19.) The Court agrees that the two adjustments at issue apply. The conduct alleged, if proven, certainly should result in at least a two-point adjustment for leadership under Section 3B1.1 of the Sentencing Guidelines and official-victim enhancement under Section 3A1.1.

months. (*Id.*) AUSA Friedman further communicated to defense counsel that the Government was nevertheless willing to accept a plea to its original offer of one count with a five-year statutory maximum. (*Id.*) Defendant rejected the Government's proposal and through his counsel stated he would be getting ready for trial. (*See id.* at 48.)

Following Defendant's third rejection, the Government alleges it took significant steps to prepare for trial. (*See generally id.*) As a result of those efforts, the Government states it was able to gather "damning" evidence that Defendant had committed the crimes with which he was charged. (*See* Dkt. No. 693 at 12.) Consequently, on August 31, 2022, AUSA Friedman sent an email to defense counsel stating that the Government would, for a brief period, allow Defendant to plead guilty to one count of cyberstalking with a 60-month statutory maximum. (*Id.*) That same email noted that if Defendant declined the offer, any future plea offer would require him to plead guilty to "at least two counts of stalking." (*See* Dkt. No. 693-2 at 55–57.) On September 12, 2022, Mr. Camiel sent AUSA Friedman an email stating that Defendant had rejected the Government's plea offer. (*Id.* at 65.)

On October 13, 2022, on the request of Defendant, Mr. Camiel moved to withdraw as counsel and was permitted to do so. (Dkt. No. 159.) On November 8, 2022, Defendant was granted his motion to proceed *pro se*. (Dkt. No. 174.) Since then, and until recently, the Government indicates that it has remained willing to allow Defendant to plead guilty on the same terms that it stated on August 31, 2022.[4] Those terms required Defendant to plead guilty to two counts of stalking. (*See generally* Dkt. No. 693.)

On the facts as recited, the Court is compelled to the conclusion that Defendant's allegations amount to nothing more than the *post-hoc ergo propter hoc* fallacy condemned in

---

[4] As recently as June 27, 2023, AUSA Friedman has communicated to Defendant, by letter, that the Government remained "willing to enter into a plea under which [Garg would] plead guilty to two counts under 18 U.S.C. § 2261A" provided that the plea was entered by July 31, 2023. (Dkt. No. 693.)

ORDER
CR21-0045-JCC
PAGE - 4

*Robinson*. *United States v. Robison*, 644 F.2d 1270, 1273 (9th Cir. 1981) (dismissing a vindictive prosecution claim because defendant-appellant merely illustrated the fact that his prosecution followed the exercise of a procedural right in another, unrelated case.) Indeed, when the Government made its August 31, 2022, plea offer, it explicitly stated that if Defendant declined the plea, any future offer would require him to plead guilty "to at least two counts of stalking." (Dkt. No. 693.) Hence, the Government's ensuing plea offers to two counts of stalking, though proposed incidentally to Defendant's election to proceed *pro se*, more germanely results from Defendant's prior rejection of the August 31, 2022, plea.

This fact alone is sufficient to dispose of Defendant's vindictive prosecution claim. Yet the Court finds it proper to offer additional reasoning for the result reached. When, as here, the Government's decision to offer less favorable plea deals are a function of the routine course of prosecutorial review, "there is no realistic likelihood of prosecutorial abuse, and therefore no appearance of vindictive prosecution arises merely because the prosecutor's action was taken after a defense right was exercised." *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1169 (9th Cir. 1982). As the Supreme Court recognized in *United States v. Goodwin*, 457 U.S. 368 (1982), because the prosecutor may reevaluate information as the case develops, he "should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." *Id*. Ultimately, then, when AUSA Friedman re-formulated Defendant's plea offer after careful review of the sentencing guideline, the Government was engaging in nothing more than the routine course of prosecutorial review for which no impropriety arises. The holdings in *Goodwin* and *Robinson* dictate this Court's conclusion that a presumption of vindictiveness is not warranted in this case.

Accordingly, Defendant's motion (Dkt. No. 654) is DENIED.

### B.     Attorney-Client Privilege

Next before the Court is Defendant's ineffective assistance of counsel claim. (Dkt. No.

654.) Assuming, *arguendo*, that Defendant has a colorable claim, the Government shall require additional information to respond. (*See generally* Dkt. No. 705.) It is well established that a Defendant who asserts an ineffective assistance of counsel claim thereby waives any privilege as to relevant attorney-client communications. *See, e.g., Lambright v. Ryan*, 698 F.3d 808, 818 (9th Cir. 2012) (a "defendant impliedly waives his attorney-client privilege the moment he files a habeas petition alleging ineffective assistance of counsel.")

Accordingly, the Court FINDS that Defendant waived his attorney-client privilege as to communications underlying his ineffective assistance of counsel claim and ORDERS Mr. Camiel to provide the Government with documents pertinent to the below matters within one week of this Court's Order:

(1) documents advising, or reflecting, Mr. Camiel's advice to Defendant concerning the Sentencing Guidelines calculation and range that would apply to Defendant under a plea and/or following a trial;

(2) documents describing, or relating to, forensic evidence found by the Government on digital devices in the case, including documents relating to an email sent by the Government to Mr. Camiel on August 31, 2022, outlining and attaching such evidence;

(3) documents providing, or reflecting, Mr. Camiel's advice as to whether to accept the Government's plea offers and/or Defendant's reasons for deciding not to accept the offers, including advice or reasons related to the effect on Defendant's immigration status.

The Court further ORDERS that, within two weeks of the date of this Order, Mr. Camiel participate in an interview conducted by the Government concerning the matters with which the Court has found a waiver of attorney-client privilege.

DATED this 27th day of September 2023.

John C. Coughenour
UNITED STATES DISTRICT JUDGE