THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>SUMIT GARG,<br><br>  Defendant. | CASE NO. CR21-0045-JCC<br><br>ORDER |

This matter comes before the Court on Defendant's motion for a new trial and for a judgment of acquittal (Dkt. No. 916). Having thoroughly considered the briefing and the relevant record, the Court DENIES the motion[1] for the reasons explained herein.[2]

I.  **BACKGROUND**

In March 2021, Defendant was charged with six counts of cyberstalking. (*See* Dkt. No. 21.) The Government later attained a superseding indictment in which it alleged additional cyberstalking activity. (*See* Dkt. No. 117 at 11.) In August 2021, Defendant moved to proceed *pro se*. (Dkt. No. 61.) After this Court initially denied Defendant's motion, Defendant filed a renewed motion to proceed *pro se* a year later. (*See* Dkt. Nos. 70, 167.) U.S. Magistrate Judge

---

[1] The Court previously stated its denial of Defendant's motion at the July 9, 2024, sentencing hearing. (*See* Dkt. No. 964.) The following order outlines the basis for that denial.

[2] The Court further GRANTS the Government's unopposed motion (Dkt. No. 938) for leave to file an overlength response to Defendant's motion.

ORDER
CR21-0045-JCC
PAGE - 1

Kate Vaughan found Defendant competent to proceed *pro se* and granted the motion. (*See* Dkt. No. 174.) On March 22, 2024, after a resulting ten-day trial, a jury found Defendant guilty on all seven counts for which he was tried. (*See* Dkt. No. 887.) Defendant now moves for a new trial. (Dkt. No. 916.) The Government opposes. (Dkt. No. 939.)

## II. DISCUSSION

### A. Motion for a New Trial

The Court may vacate a judgment and grant a motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). This decision "is within the sound discretion of the district court[.]" *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1212 (9th Cir. 1992) (citation omitted). Here, Defendant asserts 25 grounds that he claims entitle him to a new trial. None have merit. The Court addresses each in turn.

#### 1. Content Records Admitted

Defendant argues this Court erred in allowing the Government to present certain content records at trial. (*See* Dkt. No. 916 at 12–16.) The Court disagrees. In its order partially denying the Government's motion for a ruling authenticating certain records (Dkt. No. 821), this Court held that "[t]he Government cannot authenticate the content of these [content records] relying *solely* on certifications from the records custodians of those companies . . . ." (Dkt. No. 855 at 5) (emphasis added). Defendant claims that the Court violated this order by admitting certain content records, including social media posts and Google e-mail content, into evidence. (*See* Dkt. No. 916 at 13.) However, the Government did not rely solely on certifications from records custodians to authenticate these records. Instead, it also relied on other proof suggesting that Defendant sent these communications, including forensic evidence from devices, (*see* Dkt. No. 903-4 at 79), overlap evidence, (*see* Dkt. No. 903-1 at 5–12), recorded jail calls, (*see* Dkt. No. 903-3 at 68–74), and witness testimony. By relying on these various authentication methods, the Government complied with the Court's previous order.

Defendant further asserts that the Court erred in refusing to "allow the Defendant to

1  present the same emails obtained from Google's production . . . ." (Dkt. No. 916 at 13.) The
2  Court, however, did not refuse admission of all e-mails Defendant sought to present. Rather, as
3  the Government points out, the Court admitted authenticated e-mails—it denied the admission
4  only of non-authenticated e-mails. (*See* Dkt. No. 939 at 12.)

5  Lastly, Defendant challenges the Court's refusal to admit threats written and sent by his
6  ex-wife, Lindsay Hefton, while Defendant was in custody, arguing these e-mails were
7  exculpatory. (*See* Dkt. No. 916 at 15.) Again, Defendant is incorrect. These e-mails are not
8  exculpatory because, as the Government notes, Ms. Hefton testified she sent them to divert
9  suspicion from Defendant, thereby eliminating any exculpatory value. (*See* Dkt. No. 939 at 13.)

### 2. Limiting Gary Ernsdorff Cross-Examination

Defendant argues the Court erred in barring Defendant from cross-examining King County Prosecutor Gary Ernsdorff about prior adverse judicial findings. (*See* Dkt. No. 916 at 16–18.) Other circuits have held that barring defendants from cross-examining witnesses about a prior judicial determination violates a defendant's right under the Confrontation Clause to an effective cross-examination. *See, e.g.*, *United States v. Woodard*, 699 F.3d 1188, 1197 (10th Cir. 2012); *United States v. Cedeno*, 644 F.3d 79, 82–83 (2d Cir.); *United States v. Dawson*, 434 F.3d 956, 957–959 (7th Cir. 2006); *United States v. Whitmore*, 359 F.3d 609, 619–22 (D.C. Cir. 2004). The Ninth Circuit, however, has not addressed this issue.

Though Defendant does not make clear which adverse judicial findings he sought to cross-examine Mr. Ernsdorff about, the Court presumes Defendant is referring to a Ninth Circuit opinion suggesting that Mr. Erndsorff's actions, if true, would amount to "shameful misconduct." *Frost v. Gilbert*, 818 F.3d 469, 477 (9th Cir. 2016). However, the Ninth Circuit withdrew this opinion when it issued a superseding opinion on remand. *See Frost v. Gilbert,* 835 F.3d 883 (9th Cir. 2016). Accordingly, Defendant's argument is without merit.

### 3. Cross-Examination Regarding Melissa Hutchins' Diary

Defendant argues that the Court erred in barring a cross-examination of Melissa Hutchins

and Travis Bieber concerning the contents of Ms. Hutchins' diary. (*See* Dkt. No. 916 at 18–21.) In an order granting the Government's motion for discovery, the Court held the contents of the diary not material to a defense because the entries predated Defendant's cyberstalking campaign. (*See* Dkt. No. 407 at 2.) Defendant claims this violated his right to present a defense. (*See* Dkt. No. 916 at 19.) But again, he fails to explain *how* the diary is relevant to his defense.

### 4. Admission of Ring Videos

Defendant argues that the admission of Ring videos recovered from his phone, which showed him staging what he claimed was Melissa Hutchins' boyfriend, Cesar Gonzalez, climbing into his back yard, caused unfair prejudice and confusion and misled the jury. (*See* Dkt. No. 916 at 21–22.) Defendant is incorrect. To the extent the Ring videos were unclear, as the Government points out, Ms. Hefton's testimony corroborates their authenticity and identifies Defendant, not Mr. Gonzalez, as the individual in the video, thereby eliminating any confusion. (*See* Dkt. No. 939 at 16.) Furthermore, nothing suggests that the admission of these videos resulted in unfair prejudice.

### 5. Admission of Exhibit 451

Defendant argues that the Court erred in admitting Exhibit 451 (Dkt. No. 903 at 173–177), containing an e-mail titled "Judges, prosecutors, lawyers killed," which Defendant sent to King County Prosecutors. (*See* Dkt. No. 916 at 22–25.) The e-mail listed lawyers and judges who had been killed, then left the last two lines of the list blank followed by the words, "LEAVING 31 and 32 BLANK FOR NOW – LET US CALL THEM TO BE DETERMINED." (Dkt. No. 903 at 176–177.)

Defendant claims this exhibit is unfairly prejudicial and "is irrelevant to assess whether Mr. Garg is guilty of cyberstalking Ernsdorff, the charged alleged victim, who never directly received the email." (Dkt. No. 916 at 23–25.) The Court disagrees. The e-mail provides strong evidence of Defendant's conspiracy charge, as described in the Superseding Indictment, to engage in cyberstalking "an ever-expanding circle of victims . . . lawyers and experts who

represented Victim-1 in civil protection actions . . . and King County prosecutors prosecuting [Defendant] . . . ." (Dkt. No. 117 at 5). Thus, its highly probative nature outweighs any risk of unfair prejudice.

### 6. Admission of Domestic Violence Testimony

Defendant challenges the admission of testimony regarding Ms. Hefton's begrudging participation in the cyberstalking conspiracy, due to Defendant's domestic violence. (*See* Dkt. No. 916 at 26.) Defendant claims that there is no spatial or temporal connection between this allegation and Ms. Hefton's cyberstalking, because she only sent e-mails while Defendant was in custody. (*Id.*)[3] However, as the Government notes, Ms. Hefton testified that she sent these e-mails because she feared his abuse upon his release. (*See* Dkt. No. 939 at 19.) Therefore, despite Defendant's imprisonment, there remained a spatial and temporal connection between the domestic violence and Ms. Hefton's cyberstalking activity. The allegations are thus highly probative and outweigh any risk of unfair prejudice.

### 7. Exclusion of Gregory Moon's Testimony

Defendant challenges the Court's decision to exclude testimony that Gregory Moon did not observe Defendant commit any domestic violence upon Ms. Hefton. (*See* Dkt. No. 916 at 26.) But this testimony was irrelevant, as it did not speak to what may have occurred in private, hidden from view. Defendant's argument is therefore without merit.

### 8. Defendant's *Daubert* Motion

Defendant argues the Court erred in failing to rule on his previous *Daubert* motion seeking to exclude expert testimony from the Government's forensic computer analyst and an investigative analyst. (Dkt. No. 916 at 26–27.) Under the rules of evidence, expert testimony is admissible if:

   (a) The expert's scientific, technical, or other specialized knowledge will help

---

[3] In a previous order denying Defendant's motion to suppress Ms. Hefton's testimony, the Court held that Defendant's alleged domestic violence was "inextricably intertwined" with his cyberstalking. (Dkt. No. 780 at 2.)

>the trier of fact to understand the evidence or determine a fact in issue;
>(b) The testimony is based on sufficient facts or data;
>(c) The testimony is the product of reliable principles and methods; and
>(d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Moreover, under *Daubert*, "the trial judge must determine . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993).

Here, both expert testimonies, by using specialized knowledge and reliable methods to reveal links between Defendant's technological activity and cyberstalking, were admissible. (*See generally* Dkt. Nos. 591-1; 591-2; 591-3.) Defendant was not entitled to an affirmative ruling on this issue prior to trial. *See United States v. Kennedy*, 714 F.2d 968, 975 (9th Cir. 1983) (although a "trial court has discretion to issue an advance ruling . . . it need not do so"). And, moreover, because this evidence is admissible, a new trial would not alter the outcome of the case. Meaning, even if the Court did commit error, no prejudice resulted.

9. Defendant's Motion to Dismiss Count 8

Defendant argues the Court erred in failing to rule on his motion to dismiss Count 8 (Dkt. No. 470). (*See* Dkt. No. 916 at 27.) But the Court struck that motion because Defendant failed to comply with an order limiting him to one motion per week. (*See* Dkt. Nos. 373, 496.) And Defendant's subsequent motion to reinstate the stricken motion lacked merit because it provided no legitimate reason for reinstatement. (*See* Dkt. No. 640.)

10. Defendant's Motion to Suppress

Defendant argues the Court erred in denying his motion to suppress evidence obtained after his arrest (Dkt. No. 128), his renewed motion to suppress (Dkt. No. 512), and a motion to conduct inquiry and reopen the pretrial motions deadline (Dkt. No. 515). (*See* Dkt. No. 916 at 27–28.) The Court denied the motions after finding that the Seattle Police Department lawfully obtained the evidence Defendant sought to suppress, and that Defendant failed to establish good

cause to renew his motion to suppress. (*See* Dkt. Nos. 153, 833.) Defendant then filed another motion to suppress, bringing forth the same claims he made in his previous motions. (*See* Dkt. No. 842.) He now contends that the Court erred in terminating that motion but does not explain how it provided reason for the Court to reconsider its past holdings, let alone warrant a new trial. (*See* Dkt. No. 916 at 27–28.) The Court therefore rejects this argument.

11.    Defendant's Pretrial Motions

Defendant suggests the Court erred in failing to rule on his objections to the termination of several motions. (*See* Dkt. No. 916 at 28.) A court "must decide every pretrial motion before trial unless it finds good cause to defer a ruling." Fed. R. Crim. P. 12(d). And here, the Court had good cause to defer its rulings on these motions until the presentation of evidence at trial. Moreover, given the volume of evidence supporting Defendant's conviction, Defendant fails to present an "exceptional" circumstance where the "evidence preponderates sufficiently heavily against the verdict such that a serious miscarriage of justice may have occurred . . ." *United States v. Alston*, 974 F.2d 1206, 1211–12 (9th Cir. 1992) (citations omitted).

12.    Access to Defendant's Computer Expert

Defendant argues the Government did not provide Defendant with ample opportunity to confer with a computer expert and, accordingly, the Court's decision to exclude the Defendant's expert testimony was ill-informed. (*See* Dkt. No. 916 at 29–30.) The evidence, however, suggests otherwise. The Government provided Defendant with paperwork for in-person visits with his computer expert, implemented a system that would have allowed Defendant to call his expert without the risk of divulging the contents of these phone calls to prosecution, and made efforts to schedule a two-hour videoconference call between Defendant and his expert. (*See* Dkt. Nos. 792-1 at 2, 792-2 at 1, 847-1 at 11.) This provided Defendant adequate opportunity to confer with his expert. Moreover, Defendant fails to identify any material evidence that the expert would have offered in his defense. (*See generally* Dkt. No. 916) Thus, even if it was error, Defendant fails to establish prejudice.

### 13. The Government's Alleged Interference with Defense Witness

Defendant alleges that the Government improperly interfered with a witness, Ms. Hefton, and "strongarm[ed]" her into cooperation by informing her of evidence implicating her in the cyberstalking conspiracy. (Dkt. No. 916 at 32–33.) "Substantial government interference with a defense witness's free and unhampered choice to testify" violates due process. *U.S. v. Vavages*, 151 F.3d 1185, 1188 (9th Cir. 1998) (citing *U.S. v. Little*, 753 F.2d 1420, 1438 (9th Cir. 1984)). To prevail in a substantial interference claim, a defendant must prove that the prosecutor communicated to the witness a threat "over and above what the record indicates is necessary." *Id.* at 1190. This requires that a "prosecutor or trial judge employ[] coercive or intimidating language or tactics . . . ." *Id.* at 1189. Ninth Circuit examples of substantial interference often include "unnecessarily strong admonitions against perjury aimed at discouraging defense witnesses from testifying." *Id.* at 1191.

Here, the Government did not threaten or intimidate Ms. Hefton with new charges, but merely informed her of the charges she accrued prior to her interactions with the Government. No court has held that offering a witness a plea agreement under which the witness agrees to testify truthfully constitutes substantial interference.

### 14. Improper Testimony Allegation

Defendant argues that Government fact witnesses improperly expressed views on Defendant's guilt. (*See* Dkt. No. 916 at 33.) Notably, Defendant does not cite to the transcript to support this contention. And the Court is aware of no instance where a Government witness offered such an opinion. Moreover, even if one had, Defendant failed to preserve the issue during trial by not lodging a contemporaneous objection. *See* Fed. R. Evid. 103(a).

### 15. Ms. Hutchins' Testimony

Defendant claims that Ms. Hutchins' testimony regarding her relationship with Defendant was perjurious, and therefore inadmissible at trial. (*See* Dkt. No. 916 at 33.) However, he cites to no evidence supporting this contention. Moreover, he was given ample opportunity to test her

credibility for the jury through a rigorous cross examination, which he attempted to do.

16. Lack of Witness Sequestration

Defendant suggests that the Government "violated the rule of sequestration" by failing to sequester witnesses from each other outside the courtroom. (Dkt. No. 916 at 35.) According to the rules of evidence, the Court may "(1) prohibit disclosure of trial testimony to witnesses who are excluded from the courtroom; and (2) prohibit excluded witnesses from accessing trial testimony." Fed. R. Evid. 615(b). The rules do not require that witnesses be excluded from speaking to each other outside the courtroom altogether. And Defendant cites no evidence suggesting the witnesses exchanged prohibited information.

17. Government's Closing Argument

Defendant argues that the Government's closing argument was a "false and/or a gross misrepresentation of the testimony adduced at trial," and that the Government improperly "denigrated defendant's theory of the case." (Dkt. No. 916 at 35–36.) But Defendant does not provide specific instances, nor does he present any evidence to indicate that the Government misrepresented testimony. And nothing in the record suggests that the Government misrepresented testimony during closing arguments. (*See generally* Dkt. No. 930.)[4]

18. Jury Demographics

Defendant argues that the Court improperly selected the jury in violation of Defendant's Sixth Amendment rights and the Jury Selection Service Act of 1968. (*See* Dkt. No. 916 at 36.) But the Court followed the Ninth Circuit-approved Amended Plan for the Random Selection of Grand Petit Jurors (the "Plan"). (*See* Dkt. No. 252 at 6.) Defendant does not point to any fault within the Plan or its implementation. And to the extent Defendant takes issue with the exclusion of a juror he believed to be of Indian ancestry, the Court notes the juror was randomly assigned a

---

[4] Defendant bases his claim that the Government denigrated his case on *United States v. Aquart*, 912 F.3d 1 (2d Cir. 2018), a non-binding case where the court held that the government denigrated the defense because it improperly criticized counsel for presenting inconsistent defenses. *Id.* at 42. No such conduct occurred here.

high number, and the petit jury was filled before reaching this prospective juror. Defendant's claims are therefore without merit.

### 19. Theory of the Case Instruction

Defendant argues that the Court erred by failing to give a "theory of the case [jury] instruction." (Dkt. No. 916 at 36.) But he cites no authority for the proposition that a defendant is entitled to an instruction informing the jury that they may consider the quality of an investigation when making their determination.

### 20. True Threat Instruction

Defendant claims that the Court erred in failing to give the jury his "true threat" instruction. (Dkt. No. 916 at 38.) This instruction explains that the First Amendment protects certain types of speech, then gives the definition of a true threat and the *mens rea* required to establish guilt. (*See id.*) (citing *Counterman v. Colorado*, 600 U.S. 66, 77–83 (2023)). Defendant argues that, by failing to give this instruction, the Court did not require the Government to prove the *mens rea* element of the cyberstalking charges. (*Id.*) The Court disagrees.

The *mens rea* for a true threat is recklessness, defined as the conscious disregard of a substantial and unjustifiable risk of harm. *Counterman*, 600 U.S. at 69. While the Court did not provide the jury with Defendant's proposed "true threat" instruction, it instructed the jury on the *mens rea*. It provided the jury Final Instruction No. 19, which states that the Government must prove, beyond a reasonable doubt, that "the defendant intended to harass or intimidate a person." (Dkt. No. 881 at 22.) This instruction required the Government to prove the *mens rea* element. *See* 18 U.S.C. §§ 2261A(2), 2261(b)(5), 2266(2), (5). This is all that was required.

### 21. Lesser-Included-Offense Instruction

Defendant claims that the Court erred in failing to give his lesser-included-offense instruction. (*See* Dkt. No. 916 at 40.) This instruction provided that Defendant's telephone harassment charge under 47 U.S.C. § 223(a)(1)(D) is a lesser included offense within his cyberstalking charge. (*See* Dkt. No. 881 at 50.) But telephone harassment and cyberstalking are

separate, unrelated charges. *See* 47 U.S.C. § 223. Therefore, telephone harassment is *not* a lesser-included-offense of stalking, and Defendant was not entitled to a lesser-included-offense instruction regarding telephone harassment.

22. <u>Computer Expert Funding</u>

Defendant argues the Court improperly authorized more funding for a computer expert when he was represented by counsel than when he elected to proceed *pro se*. (Dkt. No. 916 at 40.) But he fails to explain why this difference was improper or how the funds he received, *in total*, were inadequate.

23. <u>The Court's Pretrial Limiting Order</u>

Defendant argues that the Court denied him a "fair opportunity to litigate critical pretrial issues" by (a) striking several motions, (b) eventually limiting his pre-trial filings to one motion per week, and (c) imposing a page limit on each motion. (Dkt. No. 916 at 41.) But the Court only entered the order (Dkt. No. 373) imposing these restrictions after ruling on an unprecedented number of Defendant's motions. (*See, e.g.*, Dkt. Nos. 209, 225, 241, 252, 291, 342.) The Court reasoned that a fifteen-page motion per week would provide Defendant with adequate opportunity to litigate pretrial issues. The Court maintains this position, and Defendant cites no authority that suggests otherwise.

24. <u>Alleged Cumulative Errors</u>

Defendant suggests that the cumulative impact of the errors he alleges warrants a new trial. (*See* Dkt. No. 916 at 41.) However, the Court finds no actual error in its previous rulings, mooting this argument. Moreover, the Court emphasizes that, to the extent there was cumulative error, such error was due, in large part, to the sheer breadth and scope of Defendant's filings.

25. <u>Constitutional Fact Doctrine</u>

Defendant asks for a new trial based on the constitutional fact doctrine. (*See* Dkt. No. 916 at 41–42.) Under the doctrine, courts must "'make sure that the judgment does not constitute a forbidden intrusion'" on a defendant's First Amendment rights. *United States v. Hanna*, 293 F.3d

1080, 1088 (9th Cir. 2002) (quoting *Bose Corp v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499 (1984)). The First Amendment does not immunize "true threats." *Virginia v. Black*, 538 U.S. 343, 359 (2003). A true threat is a serious expression of an intent to commit violence that (1) a reasonable person would view as threatening, and (2) the defendant knows is threatening. *Id.* at 350.

Here, Defendant's numerous threats to harm his victims were objectively threatening, especially once Defendant placed himself in the physical vicinity of a victim, sent her pictures of her apartment lobby, and threatened to rape her on the roof of that apartment. (*See* Dkt. No. 903-1 at 118–121.) Evidence also indicates that Defendant intended to further threaten his victims when he threatened responding prosecutors and police investigators. His communications therefore constitute true threats and are not entitled to First Amendment protection.

### B.      Motion for a Judgment of Acquittal

When faced with a Rule 29 challenge to the sufficiency of the evidence, the Court must decide whether, viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010). Here, Defendant asserts four grounds that he claims entitle him to a judgment of acquittal. None have merit.

#### 1.      Overall Evidence

Defendant argues that the Government provided insufficient evidence of his guilt. (*See* Dkt. No. 916 at 43.) The Court disagrees. The Government offered ample evidence connecting Defendant to his crimes, including forensic evidence from his devices, (Dkt. No. 903-4 at 79), overlap evidence, (Dkt. No. 903-1 at 5–12), and recorded jail calls, (Dkt. No. 903-3 at 68–74.)

#### 2.      Electronic Communication Service

Defendant claims that the Government failed to prove beyond a reasonable doubt Defendant used an electronic communication service to engage in cyberstalking. (*See* Dkt. No.

916 at 44.) But forensic evidence from Defendant's devices, (Dkt. No. 903-4 at 79), and overlap evidence, (Dkt. No. 903-1 at 5–12), presented at trial (amongst a mountain of other evidence) suggests otherwise.

### 3. True Threat

Defendant next argues that the Government failed to establish his communications as true threats. As previously discussed above, *see supra* Part II.A.25, Defendant's communications constituted true threats.

### 4. Violation of 18 U.S.C. § 2261A(2)(B)

Defendant claims that the Government failed to prove a violation of 18 U.S.C. § 2261A(2)(B) for all counts alleged. (*See* Dkt. No. 916 at 45.) Section 2261A(2) makes it a crime to send communications that (A) place a reasonable person in fear of death or serious bodily injury, or (B) cause or attempts to cause substantial emotional distress to a reasonable person. Again, Defendant's claim lacks merit, as there is an overwhelming amount of evidence to suggest otherwise.

## III. CONCLUSION

For the reasons described above, Defendant's motion for a new trial and/or a judgment of acquittal (Dkt. No. 916) is DENIED. The Court further reemphasizes the enormous and, in the Court's experience, unprecedent number of motions filed by Defendant throughout the pendency of his case, which undoubtedly contributed to the breadth of issues raised in this motion.

DATED this 5th day of August 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE